UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        |
BIG APPLE PYROTECHNICS AND MULTIMEDIA   |
INC. and ANTHONY CAPICOTTI,             |
                                        |
              Plaintiffs,               |
                                        |   05 Civ. 9994 (KMW)
      -against-                         |
                                        |   OPINION AND ORDER
SPARKTACULAR INC., ZIRKUKIT INC. d/b/a  |
SPARKTACULAR, AMERICAN MADE PYROTECHNIC |
SUPPLIES INC. d/b/a AMPS, RALPH SANTORE |
& SONS INC., RALPH SANTORE, and STEVEN  |
FREEDMAN,                               |
                                        |
              Defendants.               |
                                        |
----------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

        Plaintiffs are a New York corporation that sells fireworks

and fireworks delivery systems, and the president of that

corporation.  Defendants are corporations and individuals with

whom Plaintiffs contracted for the exclusive right to distribute

various fireworks products in New York and other Northeastern

states.  Plaintiffs' suit alleges that Defendants bypassed

Plaintiffs and directly sold fireworks products to customers in

the Northeast.  Defendants, all citizens of Florida, now move to

dismiss the case for lack of personal jurisdiction or to transfer

to another venue.  Defendants Ralph Santore and Ralph Santore &

Sons Inc. ("Santore & Sons") also move to dismiss for improper

venue.[1]  For the reasons stated below, the motions to dismiss are granted in part and denied in part, and the motions to transfer are denied.

## STATEMENT OF FACTS

Plaintiff Anthony Capicotti is the president of Big Apple Pyrotechnics and Multimedia, Inc. ("Big Apple").  (Capicotti Aff. ¶ 1.)  Both Plaintiffs are citizens of New York.  (Compl. ¶¶ 1-2.)  Defendant Ralph Santore is the president of defendant Santore & Sons.  (Santore Aff. ¶ 1, Mar. 14, 2006.)  Both Santore and Santore & Sons (collectively, the "Santore Defendants") are citizens of Florida.  (Id. ¶¶ 5-6.)  Defendant Steven Freedman is the president of defendants Sparktacular, Inc. ("Sparktacular") and American-Made Pyrotechnics Supplies, Inc. ("AMPS").  (Freedman Decl. ¶¶ 2-3, Mar. 17, 2006.)  Freedman and his corporations (collectively, the "Freedman Defendants") are all Florida citizens.  (Id. ¶¶ 2-3, 15.)

Plaintiffs allege the following facts in their Complaint.  In 2002, Santore proposed to Capicotti that Plaintiffs become the exclusive Northeast distributors of an indoor fireworks system to which Defendants possessed U.S. rights.  (Compl. ¶¶ 16, 18, 20-21.)  Capicotti and another Big Apple employee traveled

---

[1] Because, as explained below, this Court does not have jurisdiction over either Santore or Santore & Sons, their motion to dismiss for improper venue is moot.

repeatedly to Florida to inspect the system and conduct negotiations.  (Id. ¶¶ 17, 19.)  The parties signed the distribution agreement in August 2002, and Plaintiffs paid Defendants an initial fee of $100,000.  (Id. ¶ 24.)  Although Plaintiffs then opened offices and began preparing marketing materials, Defendants did not provide the fireworks and delivery systems for which Plaintiffs had contracted.  (Id. ¶ 25-26.) Sometime after February 2004, Plaintiffs demanded the products or a $100,000 refund, at which point Defendants insisted on new, more favorable terms.  (Id. ¶ 27-29.)  Plaintiffs then learned that Defendants had been directly marketing the indoor fireworks system in the Northeast the entire time.  (Id. ¶ 31.)

## DISCUSSION

### I.   MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.   Standard of Review

Although Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b), the Court should apply the standard of review used for motions for summary judgment.  Both Plaintiffs and Defendants have submitted affidavits and exhibits in support of their positions on the motions.  Rule 12(b) does not allow the Court to convert these motions to motions for summary judgment, as would be permissible for a motion to dismiss for failure to state a claim, because a successful motion to

3

dismiss for lack of personal jurisdiction or improper venue
strips the Court of power to hear the case and thus to issue any
judgment, summary or otherwise.  But while a motion pursuant to
Rules 12(b)(2) or 12(b)(3) cannot be converted into a Rule 56
motion, the Court may nevertheless consider the documents
submitted outside the pleadings, using the legal standard of Rule
56 as an guide.  See Kamen v. AT&T Co., 791 F.2d 1006, 1011 (2d
Cir. 1986); Melnick v. Adelson-Melnick, 346 F. Supp. 2d 499, 503
& n.19 (S.D.N.Y. 2004) (citing Kamen and using summary judgment
standard for Rule 12(b)(2) motion).  I will evaluate Defendants'
motions to dismiss using the standard of review for motions for
summary judgment, granting Defendants' motions only if there are
no genuine issues of material fact, and viewing the facts in the
light most favorable to Plaintiffs, the nonmoving party.
Cotarelo v. Vill. of Sleepy Hollow Police Dep't, 460 F.3d 247,
251 (2d Cir. 2006).[2]  Because these motions were filed before
discovery was completed, Plaintiffs need make only a prima facie
showing as to jurisdiction; if, after discovery, the remaining

---

[2] Plaintiffs are not entitled to advance notice of this standard
of review.  "A party is deemed to have notice that a motion may be
converted into one for summary judgment if that party 'should
reasonably have recognized the possibility' that such a conversion
would occur."  Sira v. Morton, 380 F.3d 57, 68 (2d Cir. 2004) (quoting
Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999)).  Where a
plaintiff submits affidavits in opposition to a motion to dismiss,
"[h]e certainly cannot be heard to claim that he was surprised when
the district court accepted his invitation.  Indeed, the district
court arguably would have erred in declining to do so."  Gurary, 190
F.3d at 43.

Defendants contest the factual allegations underpinning that showing, Plaintiffs will need to show by a preponderance of the evidence that jurisdiction is proper.  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).

**B.   Personal Jurisdiction**

In a case that comes before the Court pursuant to diversity jurisdiction, the Court may exercise personal jurisdiction over Defendants to the same extent as could a New York state court. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002).  To resolve a motion to dismiss for lack of personal jurisdiction, I must therefore consider (1) whether New York law would permit a New York state court to exercise jurisdiction over Defendants and (2) whether that exercise of jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment.  Id.

**1.   New York Law**

New York law offers two possible bases for the exercise of personal jurisdiction over out-of-state defendants: traditional general jurisdiction, New York Civil Practice Law and Rules ("CPLR") § 301; and the long-arm statute, CPLR § 302.

a.   <u>General Jurisdiction</u>

CPLR § 301 states simply, "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  N.Y. C.P.L.R. § 301 (McKinney 2007).  The enactment of the long-arm statute, CPLR § 302, did not eliminate any of the traditional bases for general personal jurisdiction, such as physical presence, consent, domicile, or business activity.  See <u>Seaweed, Inc. v. DMA Prod. & Design & Marketing LLC</u>, 219 F. Supp. 2d 551, 554 (S.D.N.Y. 2002).  The only basis for Plaintiffs' claim of general personal jurisdiction here is their contention that Defendants have done business in New York State.

"[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'"  <u>Hoffritz for Cutlery, Inc. v. Amajac, Ltd.</u>, 763 F.2d 55, 58 (2d Cir. 1985) (quoting <u>Tauza v. Susquehanna Coal Co.</u>, 115 N.E. 915, 917 (N.Y. 1917)).  New York courts have personal jurisdiction over such a corporation for any claim, regardless of whether the events giving rise to the claim took place within the state.  See <u>Laufer v. Ostrow</u>, 434 N.E.2d 692, 696 (N.Y. 1982).

Although each case must be decided on its own facts, Sterling Novelty Corp. v. Frank & Hirsch Distrib. Co., 86 N.E.2d 564, 565 (N.Y. 1949), some common indicia of "doing business" in the state include maintaining a New York office, bank account, or phone listing; conducting "public relations work" within the state; or basing permanent employees here, Wiwa v. Royal Dutch Petrol. Co., 226 F.3d 88, 98 (2d Cir. 2000).  By contrast, "mere solicitation" of business in New York is insufficient to constitute doing business here.  Miller v. Surf Props., Inc., 151 N.E.2d 874, 876 (N.Y. 1958).  To qualify as more than "mere solicitation," solicitation must be "substantial and continuous" and coupled with "other activities of substance in the state." Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).  In evaluating the existence of other activities of substance, courts "tend to focus on a physical corporate presence," Artemide SpA v. Grandlite Design & Mfg. Co., 672 F. Supp. 698, 703 (S.D.N.Y. 1987), such as solicitation "from a permanent locale within the state," Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983) (internal quotation marks omitted), but temporary visits by employees based out of state may also qualify, see Thompson Med. Co. v. Nat'l Ctr. of Nutrition, Inc., 718 F. Supp. 252, 254 (S.D.N.Y. 1989).

With these principles as a guide, I turn to the claims of

"doing business" with respect to each Defendant.

(1) *Sparktacular*.  Plaintiffs allege that Sparktacular had various ongoing business contacts in New York State. Specifically, they claim that Freedman and another employee visited New York to participate in demonstrations and trade shows (Capicotti Aff. ¶¶ 3, 5), as well as meetings with Plaintiffs (id. ¶ 6); that Sparktacular shipped goods to Plaintiffs in New York (id., Ex. C); that it printed a brochure with Plaintiffs' phone number beneath the name "Sparktacular New York" (id., Ex. B); and that Sparktacular maintained a list of about 280 "customer contacts" in New York (id., Ex. D).  Plaintiffs also allege that Freedman stated that Sparktacular made between $400,000 and $600,000 in annual sales to customers in the Northeast, although they do not specify what percentage of these sales were made to New York customers.  (Id. ¶ 4.)  Finally, Capicotti names two New York companies that allegedly purchased Sparktacular products and adds that he is aware of "several" others.  (Id.)

Plaintiffs do not allege any of the traditional markers of doing business -- office, bank account, phone number, public relations, or permanent employees -- nor any permanent physical presence in New York.  Sparktacular's solicitation of New York business, as measured by employee visits, sales, and customer contacts, would thus have to be "substantial and continuous" to

8

sustain general personal jurisdiction.

I cannot dismiss Plaintiffs' claims against Sparktacular at this stage, because there is a genuine issue of material fact about whether Plaintiffs have made a <u>prima facie</u> case for personal jurisdiction over Sparktacular.  The list of customers and the allegation that Sparktacular made about $400,000 to $600,000 in Northeast sales could be evidence of "substantial and continuous" solicitation; the testimony that Sparktacular employees made repeated visits to New York to meet with Plaintiffs and conduct sales could satisfy the "plus" prong of the "solicitation-plus" standard, even though these facts would not establish jurisdiction on their own.  <u>See</u> <u>Aquascutum of London, Inc. v. S.S. Am. Champion</u>, 426 F.2d 205, 211 (2d Cir. 1970) ("[O]nce solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.'").  Accordingly, at this stage I cannot find that this Court has no general personal jurisdiction over Sparktacular.[3]

_____

[3] Plaintiffs have made a <u>prima facie</u> case at this pre-discovery stage of the litigation, but after discovery they may be unable to prove by a preponderance of the evidence that Sparktacular's New York activities were "substantial and continuous."  For instance, Plaintiffs do not explain whether a "customer contact" indicates repeated sales, a one-time sale, or an isolated inquiry without a sale.  They do not indicate what portion of the claimed $400,000 to $600,000 in Northeast sales occurred in New York, or whether $400,000 to $600,000 represents a significant or an insignificant share of Sparktacular's overall revenues.  <u>See</u> <u>Atl. Mut. Ins. Co. v. CSX Expedition</u>, No. 00 Civ. 7668 (LMM), 2003 WL 21756414, at *2 (S.D.N.Y. July 30, 2003) (finding $875,000 in New York income insufficient to confer personal jurisdiction where said income represented only 1.35% of North American total); <u>Crouch v. Atlas Van Lines, Inc.</u>, 834 F.

(2) *AMPS*.  Plaintiffs have failed to make a <u>prima facie</u> case that AMPS is subject to the general personal jurisdiction of this Court, because the allegations about AMPS are not sufficiently specific or detailed.  AMPS, like Sparktacular, is headed by Freedman, but Plaintiffs fail to distinguish between the two when they refer generally to "the Sparktacular Defendants" and to "Mr. Freedman and his companies."  In addition to these general references, Plaintiffs' pleadings and affidavits contain several specific references to Sparktacular alone (<u>see</u> Compl. ¶ 29; Capicotti Aff. ¶¶ 4-6), but no reference to AMPS alone.[4] Plaintiffs also provide almost no AMPS-specific documentary evidence.  The only exception, a one-page "outline" apparently written by Freedman and containing the statement "American Made Pyrotechnic will produce contract for exclusive" (Capicotti Aff., Ex. H), does not constitute an allegation that AMPS ever did business in New York.

In opposition to Plaintiffs' submissions, Freedman has supplied an affidavit stating that AMPS did not conduct business in New York at the time the lawsuit was filed (Freedman Decl.

---

Supp. 596, 600 (N.D.N.Y. 1993) (finding 2% of total national business too little to constitute a "regular, systematic, and continuous course of activity" in New York).

[4] A single reference to "Santore fireworks products which were marketed and sold under Mr. Freedman's AMPS! company" (Capicotti Aff. ¶ 8) is nothing more than a description of Santore & Sons fireworks, not an allegation of jurisdiction.  Stating that Santore & Sons fireworks products were marketed by AMPS does not show that AMPS participated in any New York business or in the transaction at issue.

¶ 9, May 31, 2006); that AMPS was not party to the sub-distributor agreement (id. ¶ 8); and that AMPS engaged in no negotiation or solicitation with Plaintiffs in New York or elsewhere (id. ¶ 11).  I therefore hold that Defendants' contention that AMPS did not do business in New York is not subject to any genuine dispute of material fact.  Plaintiffs have not made out a prima facie case that AMPS is subject to this Court's general personal jurisdiction.

(3) Santore & Sons.  In arguing that the Court has general personal jurisdiction over Santore & Sons, Plaintiffs allege that Defendant Santore solicited Plaintiffs' participation in the transaction while Plaintiffs were in New York (Capicotti Aff. ¶ 8); that the transaction "included" fireworks manufactured by Santore & Sons (id.); that Santore & Sons received a portion of the fee paid by Plaintiffs for the New York distribution rights (id.); that Santore & Sons sent Plaintiffs two faxes in New York (id. ¶ 9, Ex. G); that Anthony Santore visited New York on business regularly "on behalf of" the company (id. ¶ 10);[5] and that Santore & Sons purchased fireworks from one New York company and sold them to another (id. ¶ 11).

These allegations do not come close to a prima facie showing that Santore & Sons did business in New York with a "fair measure

_____

[5] As discussed below, Plaintiffs have not made a prima facie showing that Anthony Santore acted as Santore & Sons' agent, and so his actions do not give rise to jurisdiction over the company.

11

of permanence and continuity." <u>Hoffritz for Cutlery</u>, 763 F.2d at 58 (internal quotation marks omitted).  Unlike the allegations about Sparktacular, which include yearly sales figures and dozens of individual customers' names, the allegations about Santore & Sons state no more than that it conducted isolated business with New York buyers and sellers.

(4) *Freedman and Santore*.  Plaintiffs do not allege that the individual defendants, Freedman and Santore, did business in New York, except in their capacities as corporate officers.  "An individual cannot be subject to jurisdiction under CPLR 301 unless he is doing business in New York as an individual rather than on behalf of a corporation." <u>Brinkmann v. Adrian Carriers, Inc.</u>, 815 N.Y.S.2d 196, 199 (App. Div. 2006) (citing <u>Laufer</u>, 434 N.E.2d at 696).  The Court therefore has no general personal jurisdiction over either Freedman or Santore.


b.   <u>Long-Arm Jurisdiction</u>

The second possible ground for personal jurisdiction over Defendants is long-arm jurisdiction.  The long-arm statute, CPLR § 302, permits jurisdiction over foreign defendants in litigation that arises from several specific types of transactions.  In particular, the statute provides that "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . .

12

who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1) (McKinney 2007).  "Transacting business" requires a lesser showing than "doing business," Beacon Enters., 715 F.2d at 763, because even one isolated transaction may give rise to New York jurisdiction if the claim in the case is substantially related to the transaction, Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 43 (N.Y. 1988).  "No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper."  CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

Turning to each Defendant individually:

(1) *Sparktacular*.  Plaintiffs contend that the Court may exercise jurisdiction over Sparktacular based on transaction of business in New York, because there was a distribution agreement between Sparktacular and Big Apple.[6]  The agreement contemplated the shipment of fireworks and fireworks systems to Plaintiffs in

---

[6] Plaintiffs note that the undated "Sub-Distributer Agreement" submitted by the Freedman Defendants, which was signed by Capicotti but not by a representative of Sparktacular (see Freedman Decl., Ex. A, Mar. 17, 2006), was not a final contract.  (Capicotti Aff. ¶ 5.)  The Complaint does allege, however, that "Plaintiffs agreed to purchase the distributorship."  (Compl. ¶ 24.)  Because these motions to dismiss were filed before jurisdictional discovery, that allegation of an agreement can form a prima facie case for transaction-of-business jurisdiction over Sparktacular, even if no final written agreement has yet been produced in evidence.

New York.  (Compl. ¶ 18.)  In addition, Plaintiffs claim that
Freedman and other Sparktacular employees made several trips to
New York to negotiate the agreement (Capicotti Aff. ¶¶ 3, 6) and
traveled to New York to promote the partnership after the
agreement was completed (id.).

These contacts meet the "transacting business" standard for
jurisdiction under CPLR § 302(a)(1).  The Court of Appeals has
held that a situation in which a defendant travels to New York to
negotiate and execute a contract out of which a dispute later
arises is the "clearest sort of case in which our courts would
have 302 jurisdiction."  George Reiner & Co. v. Schwartz, 363
N.E.2d 551, 554 (N.Y. 1977) (internal quotation marks omitted).
Many courts have also held that in-person contract negotiations
in New York can satisfy the requirements of Section 302(a)(1)
even where no contract was ultimately executed within New York.
E.g., Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys.,
Inc., 10 F. Supp. 2d 334, 340 (S.D.N.Y. 1998); Moyers v. Brown,
No. 89 Civ. 4935 (CSH), 1990 WL 3183, at *4 (S.D.N.Y. Jan. 11,
1990); Rates Tech., Inc. v. Diorio, 626 F. Supp. 1295, 1297-98
(E.D.N.Y. 1986); Trafalgar Capital Corp. v. Oil Producers Equip.
Corp., 555 F. Supp. 305, 309 (S.D.N.Y. 1983), abrogated on
unrelated grounds by Kreutter, 522 N.E.2d 40.  The New York
negotiations between Plaintiffs and representatives of
Sparktacular suffice to meet the "transacting business" standard

14

even if no written contract ever resulted from those negotiations.  Sparktacular employees' promotional visits to New York lend further support to this conclusion.  See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 209 N.E.2d 68, 76 (N.Y. 1965) (holding that minor activities, taken cumulatively, may meet statutory standard).[7]

(2) *AMPS*.  As noted in the preceding section, Plaintiffs have not alleged any prima facie ground for either general or specific personal jurisdiction over AMPS as an entity distinct from Sparktacular or Freedman.

(3) *Santore & Sons*.  Plaintiffs allege that Santore, the president of Santore & Sons, initially solicited Plaintiffs' involvement in a transaction with Defendants by means of

---

[7] The Freedman Defendants argue that long-arm jurisdiction is improper because the agreement with Plaintiffs transferred title to goods to Plaintiffs F.O.B. Florida.  Because I conclude that Sparktacular and Freedman are subject to jurisdiction under CPLR § 302(a)(1) for "transact[ing] any business within the state," I need not decide if the agreement with Plaintiffs constituted a contract to "to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1) (McKinney 2007).  Nevertheless, I note that an F.O.B. clause in a contract is not conclusive on the issue of personal jurisdiction.  See Island Wholesale Wood Supplies, Inc. v. Blanchard Indus., Inc., 476 N.Y.S.2d 192, 194 (App. Div. 1984) (reserving "difficult question" of whether a contract F.O.B. another state can engender New York jurisdiction); see also Laumann Mfg. Corp. v. Castings USA, Inc., 913 F. Supp. 712, 718 (E.D.N.Y. 1996) ("To argue that this court does not have personal jurisdiction over the defendant because of F.O.B. [out-of-state] language in the contract is to contravene the very basis for the jurisdiction reach of section 302(a)(1)." (internal quotation marks omitted)); Cavalier Label Co. v. Polytam, Ltd., 687 F. Supp. 872, 877 (S.D.N.Y. 1988) ("The court does not believe that the New York State legislature intended to allow potential defendants to escape the reach of the long-arm statute by inserting [F.O.B.] terms into their contracts.").

telephone calls.  (Compl. ¶ 16; Capicotti Aff. ¶¶ 3, 8.)  They allege that Santore & Sons faxed proposals to Plaintiffs in New York (Capicotti Aff. ¶ 9; id., Ex. G); that Anthony Santore "regularly" traveled to New York to discuss business with Plaintiffs (id. ¶ 10); and that Santore & Sons received a portion of Plaintiffs' $100,000 payment to Defendants (id. ¶ 9).[8]

In order for Anthony Santore's activities to allow jurisdiction to be exercised over Santore & Sons, Plaintiffs must show that Anthony Santore was the company's agent.  See N.Y. C.P.L.R. § 302(a) (McKinney 2007) (extending jurisdiction if certain acts done "in person or through an agent").  "To be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state for the benefit of, and with the knowledge and consent of[,] the non-resident principal." CutCo, 806 F.2d at 366 (internal quotation marks omitted). Furthermore, "some control is necessary to establish agency for jurisdictional purposes."  Id.  Defendant Santore alleges, and Plaintiffs do not dispute, that Anthony Santore was not an employee or agent of Santore & Sons, was not authorized to act on the company's behalf, and did not inform the company of any New

---

[8] Other statements in Capicotti's affidavit are conclusory, descriptive, or too vague to support jurisdiction.  (See Capicotti Aff. ¶ 8 ("[T]he Santore Defendants were at the center of the transactions and negotiations with Mr. Freedman and his companies."); id. ("A significant part of this transaction included Santore fireworks products . . . .").)

York meetings with Plaintiffs.[9]  (Santore Aff. ¶¶ 4-6, May 11,
2006.)  Plaintiffs have made no prima facie showing that Santore
& Sons had knowledge of Anthony Santore's actions, consented to
them, or had any control over them.

The remaining allegations do not suffice to show that
Santore & Sons transacted any business in New York.  "[S]ending
faxes and making phone calls to this State are not, without more,
activities tantamount to 'transacting business' within the
meaning of" CPLR § 302(a)(1).  Granat v. Bochner, 702 N.Y.S.2d
262, 262 (App. Div. 2000); see also Traver v. Officine Meccaniche
Toshci SpA, 233 F. Supp. 2d 404, 410 (N.D.N.Y. 2002) (stating
that negotiation of contract terms by phone, fax, or mail is
"generally insufficient" to establish transaction of business).
Solicitation of business by telephone is also not a sufficient
basis for jurisdiction under § 302(a)(1).  Aero-Bocker Knitting
Mills, Inc. v. Allied Fabrics Corp., 387 N.Y.S.2d 635, 637 (App.
Div. 1976).

(4) Freedman.  Plaintiffs allege that Freedman visited New
York both to negotiate a transaction with Plaintiffs and to
promote the transaction after negotiations were completed.

---

[9] Plaintiffs do not distinguish between Anthony Santore, Jr.,
Santore & Sons' vice president and CEO, and Anthony Santore, Sr., who
Defendant Santore alleges was an independent contractor of the
company.  (See Santore Aff. ¶¶ 3-4, 8.)  Because Plaintiffs do not
dispute the statement in Santore's affidavit that the "Anthony
Santore" identified in Plaintiffs' papers is Anthony Santore, Sr.,
there is no genuine issue of material fact on this point.

(Capicotti Aff. ¶¶ 3, 6.)  As explained above, in-state negotiations are a basis for specific jurisdiction.

Freedman is subject to personal jurisdiction under CPLR § 302 because of his visits to New York in his role as Sparktacular's president.  Although a corporate officer cannot be subject to general jurisdiction under CPLR § 301 for his New York activities on behalf of a corporation, see Laufer, 434 N.E.2d at 696, the Court of Appeals has not applied this rule to specific jurisdiction under § 302.  In Kreutter v. McFadden Oil Corp., the Court of Appeals rejected the "fiduciary shield" doctrine and held that § 302 does not "accord any special treatment to fiduciaries acting on behalf of a corporation or . . . insulate them from long-arm jurisdiction for acts performed in a corporate capacity."  Kreutter, 522 N.E.2d at 46; see also id. at 45 (distinguishing Laufer).  The Kreutter rule applies to all cases involving § 302, including contractual disputes.  Arch Specialty Ins. Co. v. Entm't Specialty Ins. Servs., Inc., No. 04 Civ. 1852 (RCC), 2005 WL 696897, at *4 (S.D.N.Y. Mar. 24, 2005).

The facts of Kreutter illustrate why Freedman should be subject to New York jurisdiction.  The individual defendant in that case was a partial owner and direct manager of two defendant corporations over which the New York court possessed jurisdiction.  Kreutter, 522 N.E.2d at 42.  The Court of Appeals reasoned that because the individual defendant would surely be a

key witness for the corporations, obligating him to travel to New York, "the inconvenience he faces if made a party to the suit individually is minimal and, as a result, notions of fairness do not require us to shield him from the reach of the long-arm statute." Id. at 46.  Here, Freedman's testimony is likely to be required in defending the litigation against Sparktacular. Freedman is a "primary actor in the transaction . . . in New York, not some corporate employee in [Florida] who played no part in it." Id. at 45.

(5) *Santore*.  The only connection that Plaintiffs allege between Santore and New York is Santore's initial telephone solicitation of an agreement with Plaintiffs.  As explained above, this is not an adequate basis for specific jurisdiction.

## 2.   Due Process

Although New York law gives this Court jurisdiction over Sparktacular and Freedman, a separate inquiry must be made into whether such an exercise of jurisdiction would be consonant with the Due Process Clause.  Due process requires that a defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  These two components of the due

process test for personal jurisdiction are called the "minimum contacts" inquiry and the "reasonableness" inquiry.  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).  The import of the two inquiries is related: "a strong (or weak) showing by the plaintiff on 'minimum contacts' reduces (or increases) the weight given to 'reasonableness.'"  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 129 (2d Cir. 2002).

The due process minimum contacts test is less stringent where a court has both specific and general jurisdiction over a defendant, as here.  See Metro. Life, 84 F.3d at 568.  If a court has specific jurisdiction over a defendant, then "minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there."  Bank Brussels, 305 F.3d at 127 (internal quotation marks omitted).  Here, both Sparktacular and Freedman purposefully availed themselves of the privilege of doing business in New York by means of travel to the state for contract negotiations and promotional visits.  Those travels made litigation here reasonably foreseeable.

In evaluating whether the exercise of jurisdiction is reasonable, courts must consider (1) the burden on the defendants, (2) the forum state's interest in adjudicating the case, (3) the plaintiff's interest in convenient and effective

relief, (4) the judicial system's interest in efficient resolution of the dispute, and (5) the states' shared interest in furthering substantive social policies.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).  Where Plaintiffs have made a sufficient showing of minimal contacts, Defendants must present a "compelling case" that jurisdiction is unreasonable.  Bank Brussels, 305 F.3d at 129 (internal quotation marks omitted).  Using the Second Circuit's analysis in Bank Brussels as a guide, Sparktacular and Freedman have failed to make such a case.  First, the frequent travels of Freedman and other Sparktacular employees to New York belie the premise that litigation here would impose an undue burden on them, especially in light of "the conveniences of modern communication and transportation."  Id. (internal quotation marks omitted).  Second, New York, as the home of Plaintiffs, and as part of the disputed sales territory, has a clear interest in the case being adjudicated here.  The third and fourth factors "implicate the ease of access to evidence and the convenience of witnesses."  Id. at 130.  Because evidence and witnesses will be drawn from both New York and Florida, these factors do not cut strongly in favor of or against jurisdiction in either state.  Finally, "holding defendant subject to jurisdiction in New York does not appear likely to erode any shared social policies."  Id.

21

Because the exercise of jurisdiction over Sparktacular and Freedman is proper according to both New York law and the Constitution, their motions to dismiss are denied.  However, the motions to dismiss filed by AMPS, Santore, and Santore & Sons are granted.

## II.  <u>MOTION TO TRANSFER</u>

Sparktacular and Freedman move, pursuant to 28 U.S.C. § 1404(a), for a change of venue to the Southern District of Florida.  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a). Defendants who move for a change of venue must make "a strong case for a transfer," <u>Ford Motor Co. v. Ryan</u>, 182 F.2d 329, 330 (2d Cir. 1950), and must prove by a preponderance of the evidence that a change of venue is warranted, <u>Rodgers v. Nw. Airlines, Inc.</u>, 202 F. Supp. 309, 312 (S.D.N.Y. 1962).

A case may be transferred only to a district where the case "might have been brought."  28 U.S.C. § 1404(a).  This action might have been brought in the Southern District of Florida, because all Defendants reside in Florida and at least one Defendant resides in the Southern District of Florida.  <u>See</u> <u>id.</u> § 1391(a)(1).

22

In deciding whether to transfer a case to another proper venue, courts consider a number of criteria, none of them individually dispositive.  They include:

> (1) convenience of the parties; (2) convenience of witness[es]; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based on an assessment of the totality of material circumstances.

Laumann Mfg. Corp. v. Castings USA, Inc., 913 F. Supp. 712, 720 (E.D.N.Y. 1996); accord Anadigics, Inc. v. Raytheon Co., 903 F. Supp. 615, 617 (S.D.N.Y. 1995).

Here, the Freedman Defendants have failed to establish that these criteria weigh heavily enough in their favor to warrant a transfer.

(1) *Convenience of the parties*.  In assessing the parties' convenience, "a showing of inconvenience to the defendant is not enough to justify § 1404(a) relief, where transfer would merely place the inconvenience on the plaintiff."  Toti v. Plymouth Bus Co., 281 F. Supp. 897, 898 (S.D.N.Y. 1968).  Here, the two remaining Defendants have given no valid reason why the inconvenience to them of litigating in New York is any greater than the inconvenience to the two Plaintiffs of litigating in Florida.

(2) *Convenience of witnesses*.  "When a party seeks the

23

transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), abrogated on other grounds by Pirone v. MacMillan, Inc., 894 F.2d 579, 585-86 (2d Cir. 1990). Here, Defendants have stated only that "the witnesses having knowledge of facts material to the issues in this case reside in Florida" (Freedman Defs.' Mem. of Law 11), and they have provided the names of five likely witnesses (Freedman Decl. ¶ 16, Mar. 17, 2006). This claimed inconvenience is not specific enough to support transfer. See Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 517 (S.D.N.Y. 2004) (applying Factors and finding insufficient defendant's general claim of inconvenience to witnesses). Plaintiffs have responded that they will likely call both party and nonparty witnesses residing in New York. (Pls.' Mem. of Law 10-11.) Defendants have given no indication that the majority of witnesses called will be Florida residents. Cf. Jerclaydon, Inc. v. Hosid Prods., Inc., 104 F. Supp. 122, 123 (E.D.N.Y. 1952) (denying transfer motion where number of witnesses in proposed transferee district "substantially the same" as in transferor district).

(3) *Relative means of the parties*. Defendants have made no mention of this factor, and there is no evidence that Plaintiffs

have greater means than the remaining Defendants.

(4) *Operative facts and sources of proof*.  Although Defendants may be required to produce documents kept at their Florida offices, Plaintiffs will need to produce documents stored in New York.  Such an "exchange of burdens" does not justify a transfer.  See Arrow Elecs., Inc. v. Ducommun Inc., 724 F. Supp. 264, 266 (S.D.N.Y. 1989).  Defendants have not shown that producing documents in New York would be "unduly burdensome."  Soviet Pan Am Travel Effort v. Travel Comm., Inc., 756 F. Supp. 126, 134 (S.D.N.Y. 1991).

(5) *Attendance of witnesses*.  While a court should consider the availability of compulsory process against nonparty witnesses, this factor "is not controlling, particularly where there has been no suggestion by defendants that their non-party witnesses could not or would not appear at a trial in New York."  First Nat'l City Bank v. Nanz, Inc., 437 F. Supp. 184, 189 (S.D.N.Y. 1975).  Here, Defendants have provided the names of certain nonparty witnesses, but have not argued that they would be unable or unwilling to testify in New York.  Defendants do not contend that any of the named witnesses, who are current and former employees and business partners of Freedman and Sparktacular (see Freedman Decl. ¶ 16, Mar. 17, 2006; Freedman Defs.' Reply Mem. of Law 14), is likely to be hostile to Defendants.  See TM Claims Serv. v. KLM Royal Dutch Airlines, 143

F. Supp. 2d 402, 406 (S.D.N.Y. 2001) (noting that availability of compulsory process is "generally relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship" (internal quotation marks omitted)).

(6) *Plaintiffs' choice of forum*.  Plaintiffs' choice of venue is "entitled to substantial consideration." A. Olinick & Sons v. Dempster Bros., Inc., 365 F.2d 439, 444 (2d Cir. 1966), particularly when the chosen venue is their home, see Dwyer v. Gen. Motors Corp., 853 F. Supp. 690, 694 (S.D.N.Y. 1994). Moreover, although Defendants note that this factor is given less weight "'when none of the conduct complained of occurred in the forum'" (Freedman Defs.' Mem. of Law 15 (quoting Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002))), here Plaintiffs allege that part of the contract negotiations took place in New York, and Defendants have not yet shown by a preponderance of the evidence that these allegations are untrue. The Plaintiffs' choice of venue thus receives its usual substantial weight, in favor of venue in New York.

(7) *Calendar congestion*.  Defendants have not suggested that this Court's docket is more congested than that of the Southern District of Florida.

(8) *Familiarity with substantive law*.  Defendants contend that, under both Florida and New York choice-of-law rules,

Florida law will be applied in this case.  Assuming <u>arguendo</u> that this is correct, "[t]he fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer, . . . especially in an instance such as this where no complex questions of foreign law are involved."  <u>Vassallo v. Niedermeyer</u>, 495 F. Supp. 757, 760 (S.D.N.Y. 1980); <u>see also</u> <u>Nat'l Patent Dev. Corp. v. Am. Hosp.</u> <u>Supply Corp.</u>, 616 F. Supp. 114, 119 (S.D.N.Y. 1984) (holding factor to be of "minor importance" where foreign law is not "unclear, unsettled, or difficult").  Here, Defendants have not suggested that the Florida law to be applied will be anything but well-settled contract law.  Accordingly, this factor weighs only slightly in favor of Defendants' motion.

(9) *Practical difficulties*.  Defendants have not identified any practical difficulties with conducting trial in New York, other than the convenience of parties and witnesses discussed above.

(10) *Interest of justice*.  Defendants have not suggested that trial in New York would be unjust for any reason.

In sum, only one factor -- familiarity with Florida law -- weighs in favor of Defendants' motion, and it weighs in Defendants' favor only slightly.  Defendants have not shown by a preponderance of the evidence that a "strong case" exists for transferring the action to Florida.  <u>Ford Motor</u>, 182 F.2d at 330.

27

The motion for transfer is therefore denied.

## **CONCLUSION**

For the reasons stated above, the motions to dismiss for lack of personal jurisdiction of Defendants AMPS, Santore, and Santore & Sons are GRANTED. The motions to dismiss of Defendants Sparktacular, Zikukit, and Freedman are DENIED. The motion to dismiss for improper venue of Defendants Santore and Santore & Sons is DENIED as moot. The motion to transfer is DENIED.

Pursuant to the discovery plan filed February 28, 2006, all discovery in this case was complete on August 15, 2006. The parties shall therefore submit a joint pretrial order by March 30, 2007.

SO ORDERED.

Dated:     New York, New York
           March **6**, 2007

                                    _Kimba M. Wood_
                                    Kimba M. Wood
                                    United States District Judge

28